**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| CHRISTINA EPLEY,<br><br>        Plaintiff,<br><br>vs.<br><br>LINDA MCMAHON,<br>Acting Commissioner of Social Security<br><br>        Defendant. | 3:06-CV-00199-BES (RAM)<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Brian E. Sandoval, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Plaintiff filed a motion for reversal of the commissioner's decision on November 23, 2006 (Doc. #10). Defendant opposed the motion and filed a cross-motion to affirm the commissioner's final decision (Doc. #13).

**BACKGROUND**

Plaintiff Christina Epley filed an application for Disability Insurance Benefits (DIB) (Tr. 48, 49-52) and Supplemental Security Income (SSI) (Tr. 461-464, 465) on June 6, 2003. Plaintiff alleges disability beginning on December 13, 2002, based on thyroid disease, multiple cysts, and symptoms including some related to depression. (Tr. 18). At her disability hearing on May 24, 2005 Plaintiff appeared and testified. (*Id.*). Her attorney, Dennis A. Cameron, represented her at the hearing. (*Id.*). The Administrative Law Judge (ALJ) found Plaintiff "Not Disabled" in the decision he issued (September 20, 2005). (Tr.

23). The Plaintiff appealed the decision. (Tr. 13). The Appeals Council denied review. (Tr. 6-8). Thus, the ALJ's decision became the final decision of the Commissioner. (Doc. #10). Plaintiff now appeals that decision. (*Id.*).

Plaintiff was forty years old at the time of the decision and has the equivalent of a high school education. (Tr. 18). Her past work experience includes work as a bartender, salesperson, sales manager, and materials handler. (*Id.*).

Both parties have stipulated that the ALJ fairly and accurately summarized the material evidence and testimony. (Doc. #13 at 3, Doc. #10 at 2).

## **DISCUSSION**

A. Judicial Review - Substantial Evidence Standard

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Smolen v. Charter*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F. 3d 748, 749 (9th Cir. 1995). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Id*. The ALJ alone is responsible for determining credibility, and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986); 20 C.F.R. § 404.1512(a). To meet this burden, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months ..." 42 U.S.C. §423 (d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled, *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987); *see* 20 C.F.R. §§ 404.1520, 416.920. In the first step, it must be determined whether the claimant is engaged in "substantially gainful activity"; is so, a finding of nondisability is made and the claim is denied. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in substantial gainful activity, the second step requires determining whether his impairments or combinations of impairments are "severe." *Yuckert*, 482 U.S. at 140-41. If a claimant's impairments are so slight that they cause no more than minimal functional limitations, it will be determined that the claimant does have a severe impairment and is not disabled. 20 C.F.R. § 404.1520. If, however, it is found that the claimant's impairments are severe, such impairments will be presumed to be sufficiently sever provided the impairments(s) meet or equal the impairments described in the Commissioner's Listing of Impairments and or of sufficient duration. *Id.* at § (d). If the claimant's impairments meet or equal a listed impairment, the claimant is conclusively presumed disabled. (*Id.*). If the claimant's impairments are severe but do not meet or equal a listed impairment, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141. Next, in step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the individual can still do the work he or she did in the past, then the ALJ should determine that he is not disabled. *Id.* § 404.1520(e). If he or she cannot perform past relevant work, the burden shifts to the Commissioner. *Id.* Finally, in step five, the Commissioner must establish that the claimant can perform work available in the national economy. *Yuckert*, 482 U.S. at 141-42; *see* 20 C.F.R. §§ 404.1520(e), 404.1520(f), 416.920(e), 416.920(f).

Application of steps four and five requires that the ALJ review the applicant's residual functional capacity and the physical and mental demands of the work he or she did in the past. 20 C.F.R. § 404.1520(f) & (g). "Residual functional capacity" (RFC) is what the individual can still do despite his limitations. 20 C.F.R. § 404.1545. If the individual cannot

1 do the work he did in the past, the ALJ must consider his residual functional capacity, age,
2 education, and past work experience to determine whether he can do other work. *Id.* If the
3 Commissioner established the claimant can do other work which exists in the national
4 economy, then he or she is not disabled. 20 C.F.R. 404.1566.

B. Review of the ALJ's Decision

In the present case, the ALJ applied the five step sequential evaluation process. At step one he found that the claimant was not engaged in substantially gainful activity. (Tr. 22). Further, the ALJ found that the medical evidence establishes that she has severe thyroid disease and non-specific depression and anxiety. (*Id.*). However, the ALJ concluded that these impairments did not meet or equal the level of severity of any impairments described in the Listing of Impairments (Appendix I, Subpart P, Regulation No. 4) either individually or in combination. (*Id.*). At step four, the ALJ determined that Plaintiff's impairments do not prevent her form performing her past relevant work. In determining this, the ALJ took into consideration Plaintiff's testimony as well as the medical records. (*Id.*). The ALJ found incredible Plaintiff's allegations that she can not handle more than brief periods of standing or sitting, that she requires the use of a cane for balance and support, that she cannot manipulate small objects, and that she has to lie down 5 to 6 times a day because of fatigue. (*Id.*). He based this on his determination that Plaintiff has not shown that her complaints are a reasonable consequences of her medically determinable impairments; thus, they are not credible. (*Id.*). His decision discusses the assessments of her different doctors at length, concluding that he could not accept as conclusive the findings of her primary treating physician, Dr. Highley, over the findings of the other doctors who have treated her. (Tr. 18-23). The endocrinologist, Dr. Sutton, never indicated that Plaintiff should be restricted from working. (Tr. 20). Rather, he said she was normal by December of 2003. (*Id.*). Further, Dr. Bower also found that Plaintiff was able to work without any restrictions in August of 2003, nine months after the alleged onset of disability. (Tr. 20). Further, the state agency mental health evaluation also found that Plaintiff could work. (Tr. 21). Dr. Doyle, Plaintiff's

4

neurologist, also found no abnormalities that would explain or support Plaintiff's reported symptoms. (Tr. 19). Finally, the ALJ noted that Dr. Highley's finding of disability in November of 2004 came only five months after the June 2004 statement he made in which he reported that Plaintiff's only complaint was of vaginal dryness and decreased libido. (Tr. 21). Thus, there was no continuous twelve month period of disabling impairment before he made this finding. (*Id.*)

C. Credibility Assessment

A claimant's credibility becomes important at the stage where the ALJ assesses the claimant's RFC. *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). Subjective symptom testimony may tell of greater limitations than medical evidence alone. *Id*. Thus, a claimant's credibility is often crucial to a finding of disability. *Id*. (Citing Social Security Rule 96-7p (1996)).

In general, when deciding whether to accept or reject a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis: an analysis under *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (the "*Cotton* test"), and an analysis of the credibility of the claimant's testimony regarding the severity of his or her symptoms. *Smolen*, 80 F.3d at 1281; *see also* 20 C.F.R. § 404.1529 (adopting two-part test). "If the claimant produces evidence to meet the *Cotton* test and there is no evidence of malingering, the ALJ can reject the claimants testimony about the severity of his or her symptoms only by offering specific, clear, and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281.

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)(en banc). This test "imposes only two requirements on the claimant: (1) [he or] she must produce objective medical evidence of an impairment or impairments; and (2) [he or] she must show that the impairment or combination of impairments *could*

*reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (emphasis in original); *see also* 20 C.F.R. § 404.1529(a)-(b).

An ALJ's credibility findings are entitled to deference if they are supported by substantial evidence and are "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's [symptom] testimony.'" *Bunnell*, 947 F.2d at 345-346 (*quoting Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991). When analyzing credibility an ALJ may properly consider medical evidence in the analysis. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects"); *see also Batson v. Commissioner of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2003)(holding ALJ properly determined credibility where claimant's testimony was contradictory to and unsupported by objective medical evidence).

Here, Plaintiff argues that she has satisfied the first prong of the *Cotton* test since she has shown that she suffers from a medically determinable severe impairment, and that the ALJ therefore has the burden to provide clear and convincing reasons for his rejection of her testimony. (Doc. #10). Plaintiff's assertion rests on a one line note in one of her medical records: on February 18, 2003 Doctor Bower noted in Plaintiff's chart that she was "having typical hypothyroid symptoms with hair loss, constipation, and fatigue." (Doc. #10, Tr. 22, 220). Thus, for purposes of this inquiry, Plaintiff has met the first prong of the *Cotton* test since it can be inferred from this note that fatigue is sometimes a symptom of hypothyroid condition. However, the court finds that the ALJ's decision did, in fact, provide clear and convincing evidence of his reasons for rejecting Plaintiff's subjective symptom testimony. For one, Plaintiff's thyroid levels were back to normal by November of 2004 (Tr. 20), thus vitiating the alleged source of her fatigue. The ALJ cited various reports indicating that Plaintiff's condition improved with treatment. (Tr. 20). Further, Doctors Sutton, Doyle, and

6

1   Bower all were unable to correlate Plaintiff's parathesis with her thyroid problem, or with any
2   other medical problem for that matter. (Tr. 19-21). The ALJ's decision analyzes the medical
3   evidence at length (Tr. 19-21), and found it appropriate to give greater weight to the medical
4   opinions of specialists, like the neurologist, Dr. Doyle, and the endocrinologist, Dr. Sutton,
5   than the general practitioner, Dr. Highley, the only doctor to find that Plaintiff was unable
6   to work. Further, a finding of nondisability also accords with the evaluations of the state
7   mental health agency, in which Plaintiff was found capable of performing simple one and two
8   step tasks. (Tr. 21). We think the ALJ had clear and convincing reasons for rejecting
9   Plaintiff's subjective testimony. His analysis provided specific reasons for rejecting Plaintiff's
10  testimony.

11  D. Residual Functional Capacity Assessment

12       An ALJ's RFC assessment must be affirmed if the ALJ applied the proper legal
13  standard and his decision is supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d
14  1211, 1217 (9th Cir. 2005). To properly assess a claimant's RFC, an ALJ may look to
15  statements by treating or examining physicians, consultive physicians, or any other medical
16  or psychological consultant designated by the Commissioner, in addition to claimant's own
17  statements. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Plaintiff suggests that the ALJ erred
18  simply because he did not wholly accept Plaintiff's testimony regarding her need to rest
19  during the day. (Doc. #10). However, the law does not require that the ALJ *only* consider
20  the Plaintiff's testimony regarding her abilities when assessing her residual functional
21  capacity. Rather, the ALJ is permitted to look at all of the evidence. 20 C.F.R. §§
22  404.1545(a)(3), 416.945(a)(3). Likewise, an ALJ need not include in the RFC limitations that
23  were not supported by substantial evidence. *See Batson*, 359 F.3d at 1197. The ALJ's
24  decision to formulate the hypothetical posed to the vocational expert based only on
25  limitations supported by medical evidence is in accord with the relevant law in this
26  jurisdiction. *Osenbrock v. Apfel,* 240 F.3d 1157, 1163 (9th Cir. 2001). In *Osenbrock* the Ninth
27  Circuit held that the "ALJ is free to accept to reject restrictions in a hypothetical question that

28                                            7

are not supported by substantial evidence." 240 F.3d at 1164-65. Thus, the ALJ did not improperly exclude the Plaintiff's testimony in formulating the hypothetical he gave to the vocational expert. The ALJ's hypothetical question to the vocational expert was complete and the ALJ's finding that Plaintiff could perform her past relevant work and alternative work in the national economy was supported by substantial evidence.

## **RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an order denying Plaintiff's motion (Doc. #10) and granting Defendant's cross-motion (Doc. #13).

DATED: March 20, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

8